

FILED
DISTRICT COURT OF GUAM

JUL 13 2026 aop

JEANNE G. QUINATA
CLERK OF COURT

Page **1** of **23**

## THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JULIEN ABAT WEYMOUTH,<br><br>Defendant. | CRIMINAL CASE NO. 22-00002<br><br>**DECISION AND ORDER**<br>**REGARDING MOTIONS FOR AWARD**<br>**OF ATTORNEYS' FEES**<br>**(ECF NOS. 295 & 301)** |

Before the court are third-party claimants/petitioners Mark A.T. Canovas and Kenneth I. Manalo's (collectively, the "Petitioners") Motions for Award of Attorneys' Fees. ECF Nos. 295, 301.[1] Counsels for Petitioners Canovas and Manalo joined in each other's motions and rely on the legal arguments made in Canovas' motion. ECF Nos. 298, 302-03. Counsel for Petitioner Canovas is Mr. Daniel Berman. ECF No. 181. Counsels for Petitioner Manalo are Mr. Peter Perez and Mr. Edward Han. ECF Nos. 209, 210. Upon review of the motions and the relevant law, the court finds this matter suitable for submission without oral argument. For the reasons stated below, the court **DENIES** the motions.

---

[1] The court refers to CM/ECF pagination throughout this Decision and Order.

# I.  BACKGROUND

## A.  CRIMINAL CHARGE AGAINST DEFENDANT

On April 1, 2022, the United States (the "Government") filed an Information charging Defendant Julien Abat Weymouth with (1) operating an unlawful money transmitting business in violation of 18 U.S.C. § 1960 and (2) money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). *See* ECF No. 1. The Government then filed an Amended Information charging Defendant with the sole count of operating an unlawful money transmitting business in violation of 18 U.S.C. § 1960. *See* ECF No. 8. Thereafter, on May 12, 2022, Defendant pled guilty pursuant to the Second Amended Plea Agreement to the sole count of operating an unlawful money transmitting business, ECF No. 13, and the court accepted the plea on June 1, 2022. ECF No. 15.

## B.  SUBJECT PROPERTIES TO BE FORFEITED

The Defendant agreed to forfeit the following properties ("Subject Properties") in the Second Amended Plea Agreement:

### 1.  PERSONAL PROPERTY

    a.  16.39691 Bitcoin valued at approximately $1,004,919.06 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

    b.  42646.32 XLM valued at approximately $15,779.14 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

    c.  214,526.52 VET valued at approximately $24,769.29 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;[2]

    d.  27,480.419 VTHO valued at approximately $226.68 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

---

[2] The correct amount of VET was later determined to be 214,528.52307727. *See* ECF Nos. 306, 309, 310.

e. 1.736266 Bitcoin valued at approximately $106,429.10 seized on April 22, 2021, in Hagåtña, Guam from Julien Abat Weymouth;

f. 256.52282224 Litecoin valued at approximately $63,484.27 seized on April 22, 2021, in Hagåtña, Guam from Julien Abat Weymouth;

g. 0.000829 Bitcoin valued at approximately $50.81 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 2, 2021, in Hagåtña, Guam;

h. 0.001 Bitcoin valued at approximately $61.29 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 7, 2021, in Hagåtña, Guam;

i. 30.12498 Bitcoin valued at approximately $1,846,272.66 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 7, 2021, in Hagåtña, Guam;

j. 29.94741 Bitcoin valued at approximately $1,835,389.91 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 9, 2021, in Hagåtña, Guam;

k. 18.38302 Bitcoin valued at approximately $1,126,641.99 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 9, 2021, in Hagåtña, Guam;

l. 32.57 Bitcoin valued at approximately $1,996,120.85 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on August 7, 2021, in Hagåtña, Guam;

m. 12.5 Bitcoin valued at approximately $766,088.75 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on August 9, 2021, in Hagåtña, Guam;

n. 22 Bitcoin valued at approximately $1,348,316.20 surrendered by a third-party on

behalf of Julien Abat Weymouth and seized on August 10, 2021, in Hagåtña, Guam;

o. 22.56 Bitcoin valued at approximately $1,382,636.98 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on August 27, 2021, in Hagåtña, Guam;

p. 16.51 Bitcoin valued at approximately $1,011,850.02 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on September 14, 2021, in Hagåtña, Guam; and

q. PenFed Credit Union Account #5228637 in the name of Julien Weymouth valued at $127,411.81 seized on May 14, 2021, in Hagåtña, Guam from Julien Abat Weymouth;

2. **VEHICLES**

a. 2020 Honda HR-V, VIN #3CZRU5H12LM708588 valued at $19,075.00 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

b. 2021 Honda Ridgeline, VIN # 5FPYK3F14MB007465 valued at $36,490.00 seized on April 16,2021 in Mangilao, Guam from Julien Abat Weymouth;

c. 2021 Honda Civic Hatchback, VIN # SHHFK8G07MU200923 valued at $43,995.00 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

d. 2008 Honda S2000 Roadster, VIN #JHMAP21248S000920 valued at $11,925.00 seized on April 28, 2021, in Piti, Guam from Julien Abat Weymouth;

e. 2008 Honda S2000 Roadster, VIN #JHMAP21278S002211 valued at $17,525.00 seized on May 14, 2021, in Hagåtña, Guam from Julien Abat Weymouth;

f. 2021 Honda HR-V, VIN #3CZRU5H15MM717870 valued at $23,800.00 seized

on May 14, 2021, in Hagåtña, Guam from Julien Abat Weymouth;

### 3. MONEY JUDGMENT

  a. A sum of money representing the value of the property involved in or traceable to property involved in the offense. *Id.*

On January 25, 2024, the Government filed a Preliminary Order of Forfeiture for the Subject Properties,[3] and the court granted it. ECF Nos. 76, 78. The same day, the court sentenced Defendant to a term of imprisonment of thirty months with credit for time served. *See* ECF Nos. 77; 79, at 2-3. The court deferred determination of restitution for ninety days. *Id.* at 6.

### C. NINETEEN PETITIONS FILED CLAIMING AN INTEREST IN SUBJECT PROPERTIES FROM THE PRELIMINARY FORFEITURE ORDER

In total, nineteen petitions were filed claiming an interest in the Subject Properties listed in the Preliminary Order of Forfeiture.[4] Petitioner Canovas claimed an interest in 4.04 Bitcoin and Petitioner Manalo claimed an interest in 6.15 Bitcoin.[5] *See* ECF Nos. 87, 109 (for Petitioner Canovas), ECF Nos. 93, 103 (for Petitioner Manalo). The court set a hearing for eighteen of the petitions to be held on May 29, 2024. ECF Nos. 89, 104, 116, 140, 141, 147. Both Petitioner Canovas and Petitioner Manalo filed motions for orders authorizing discovery and to vacate the hearing, which the court granted. *See* ECF Nos. 132, 157 (for Petitioner Canovas); 163, 184 (for Petitioner Manalo). The court then set a hearing for all nineteen of the petitions to be held on

---

[3] The Subject Properties in the Preliminary Order of Forfeiture did not include numbers 5, 6, and 17 from the Personal Properties or the Vehicles listed in the Second Amended Plea Agreement. *See supra* ECF No. 13.

[4] Cecil Sulla (ECF Nos. 82, 112); Edward C. Artero (ECF No. 83); Jerich Jun Reyes (ECF Nos. 84, 106); Calvin Vy (ECF Nos. 85, 107); Di Xiong (ECF Nos. 86, 108); Mark Canovas (ECF Nos. 87, 109); Michael Jin (ECF No. 88); Jason Aguon (ECF No. 91); Joshua Manglona (ECF No. 92); Kenneth Manalo (ECF Nos. 93, 103); Cristobal Castro (ECF No. 94); Ronald Sun (ECF No. 96); Harry Uttamchandani (ECF No. 99); Mark Estrada (ECF No. 118); Tanya Cruz (ECF No. 125); Sunil Uttamchandani (ECF No. 128); Edgardo Hipolito (ECF No. 129); Allan Tinoso (ECF No. 130); and Cody Hubbard (ECF No. 196).

[5] Separately, Petitioner Sunil Uttamchandani claimed an interest in 5.09 Bitcoin, Petitioner Edgardo Hipolito claimed an interest in 5 Bitcoin, and Petitioner Cecil Sulla claimed an interest in 40.3 Bitcoin. *See* ECF Nos. 82, 128, 129.

July 10, 2024. ECF Nos. 193, 199. This hearing was also continued. *See* ECF No. 218.

## D. GOVERNMENT'S MOTION TO DISMISS PETITIONS

On October 18, 2024, the Government filed a motion to dismiss eight of the forfeiture petitions, ECF No. 224, and eleven petitioners agreed to withdraw their claims.[6] ECF No. 242. The eight forfeiture petitioners facing the motion to dismiss, including Petitioners Canovas and Manalo, sought a combined interest in 38.7944 Bitcoin. ECF No. 263, at 4. Petitioner Canovas filed an Opposition and a Declaration in response to the Government's motion, and Petitioner Manalo filed an Opposition as well. ECF Nos. 228, 229, 230. Petitioner Canovas and Petitioner Manalo then filed motions to join each other's oppositions. ECF Nos. 231, 234, 235.

## E. HEARINGS ON RESTITUTION, FORFEITURE, AND GOVERNMENT'S MOTION TO DISMISS THE REMAINING EIGHT PETITTIONS

On December 26, 2024, the court held a hearing on restitution, forfeiture, and the motion to dismiss. *See* ECF No. 248. At the hearing, the court granted Petitioner Hipolito $201,272.40 and Petitioner Sunil Uttamchandani $204,895.30 in restitution. *See* ECF No. 249. The court continued the hearing regarding the motion to dismiss and regarding several petitioners' claims for restitution and forfeiture, including Petitioners Canovas and Manalo's claims.[7] *See id.*

## F. PARTIAL FORFEITURE ORDER OF SUBJECT PROPERTIES

On January 31, 2025, the Government filed a Motion for Partial Order of Forfeiture. ECF No. 263. In the Motion for Partial Order of Forfeiture, the Government noted that the remaining eight petitioners claimed an interest in a sum of 38.7944 Bitcoin and that if the motion was granted by the court there would still be 94.851329 Bitcoin remaining. *See id.* at 5. The court granted the Government's Motion for Partial Order of Forfeiture and found that the remaining

---

[6] Petitioners Sunil Uttamchandani, Edgardo Hipolito, and Cecil Sulla were among the petitioners who stipulated to withdraw their claims. *See* ECF No. 242.

[7] Petitioner Sulla objected to the proposed restitution amount, so the court continued the hearing for his restitution as well. *See* ECF No. 249, at 1 n. 2.

94.851329 Bitcoin was "more than enough to satisfy any remaining successful third-party petitions." ECF No. 266. The property forfeited to the Government in the Partial Forfeiture Order included the following:

1. 32.57 Bitcoin valued at approximately $1,996,120.85 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on August 7, 2021, in Hagåtña, Guam;

2. 12.5 Bitcoin valued at approximately $766,088.75 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on August 9, 2021, in Hagåtña, Guam;

3. 22 Bitcoin valued at approximately $1,348,316.20 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on August 10, 2021, in Hagåtña, Guam;

4. 22.56 Bitcoin valued at approximately $1,382,636.98 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on August 27, 2021, in Hagåtña, Guam; and

5. 16.51 Bitcoin valued at approximately $1,011,850.02 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on September 14, 2021, in Hagåtña, Guam. *Id.*

## G. NEW DISCOVERY REGARDING DEFENDANT WEYMOUTH'S CRYPTOCURRENCY WALLET

On February 7, 2025, Petitioner Manalo, Petitioner Canovas, and the Government filed a joint stipulation asking the court for a continuance of the February 24 Evidentiary and Motions Hearing to allow further discovery. *See* ECF No. 267. The court denied the joint stipulation stating that the "parties ha[d] not sufficiently justified their failure to adhere to the" deadline for additional discovery requests "or explained why additional time [was] needed before" the February 24 Evidentiary and Motions Hearing. ECF No. 275.

On February 20, 2025, the Government filed a notice about the availability of new

discovery relating to Defendant Weymouth's cryptocurrency wallet. ECF No. 279. The court issued an Order to Show Cause for the Government to explain whether there had been "significant delay in the investigation and [whether] discovery of the information identified in his notice was made in bad faith." ECF No. 280. The Government filed a reply arguing that it had acted in good faith and with diligence to "investigate ownership interests and determine restitution." ECF No. 283. The court found in its Order to Show Cause that the Government did not act in bad faith, and thus, it did not impose any sanctions for the delay in "dealing with the evidence in [its] possession."[8] ECF No. 304, at 3-4.

## H. EVIDENTIARY AND MOTIONS HEARING

The court held its Evidentiary and Motions Hearing on February 24, and February 25, 2025. *See* ECF Nos. 286, 288. At the hearings, Petitioners Sunil Uttamchandani and Edgardo Hipolito withdrew their previous stipulations memorializing that they were not going to pursue any forfeiture assets. *See* ECF No. 288. As a result of this withdrawal, Petitioner Uttamchandani was awarded 5.09 Bitcoin and Petitioner Hipolito was awarded 5 Bitcoin, for a total approximate value of $1,004,919.06.[9] *See* ECF No. 289, at 6; *see also* ECF No. 310. In addition, Petitioner Sulla, who had withdrawn his forfeiture claim, ECF No. 286, was awarded $611,965.67 in restitution.[10] ECF No. 310, at 8. Petitioner Canovas' petition "was DENIED for failure to meet his burden of proof under 21 U.S.C. § 853(n)(6)" and Petitioner Manalo's forfeiture claim was dismissed. ECF No. 289, at 5-6. Petitioner Manalo objected and filed for reconsideration, but the court overruled his objection. *See* ECF No. 288. Mr. Perez and Mr. Berman, "argued for

---

[8] The court issued its finding on April 11, 2025. ECF No. 304. The court's order came after both Petitioners Canovas and Manalo had filed their respective motions for attorneys' fees. *See infra* page 9.

[9] Petitioners Sunil Uttamchandani and Edgardo Hipolito were represented by Ms. Minakshi Hemlani at the hearing. *See* ECF No. 288. Petitioners Sunil Uttamchandani and Hipolito were awarded $0.00 in restitution after these hearings. *Compare* ECF No. 310 ($0.00 each), *with* ECF No. 249 ($204,895.30 and $201,272.40, respectively)

[10] Petitioner Sulla was represented by Ms. Georgette Concepcion at the hearing. *See* ECF No. 288.

attorneys['] fees" but the court instructed them to file motions on the matter. *Id.*

## I. FINAL ORDER OF FORFEITURE AND ORDER OF RESTITUTION

On March 5, 2025, the court filed its Final Order of Forfeiture and Order of Restitution, and the following property was forfeited to the Government:

1. 6.30691 Bitcoin of the 16.39691 Bitcoin valued at approximately $1,004,919.06 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

2. 42,646.32 XLM valued at approximately $15,779.14 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

3. 214,526.52 VET valued at approximately $24,769.29 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

4. 27,480.419 VTHO valued at approximately $226.68 seized on April 16, 2021, in Mangilao, Guam from Julien Abat Weymouth;

5. 0.000829 Bitcoin valued at approximately $50.81 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 2, 2021, in Hagåtña, Guam;

6. 0.001 Bitcoin valued at approximately $61.29 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 7, 2021, in Hagåtña, Guam;

7. 30.12498 Bitcoin valued at approximately $1,846,272.66 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 7, 2021, in Hagåtña, Guam;

8. 29.94741 Bitcoin valued at approximately $1,835,389.91 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 9, 2021, in Hagåtña, Guam; and

9. 18.38302 Bitcoin valued at approximately $1,126,641.99 surrendered by a third-party on behalf of Julien Abat Weymouth and seized on July 9, 2021, in Hagåtña, Guam.

ECF No. 289, at 6-7. The court ordered the Defendant to pay Petitioner Canovas restitution of

"$16,950.00 to include pre-judgment and post-judgment interest." ECF No. 288, 289. Petitioner Manalo, however, received $0.00 in restitution because he had "already been made whole." ECF Nos. 288, 289. Petitioners Sunil Uttamchandani and Edgardo Hipolito did not receive restitution, but Cecil Sulla received $611,965.67. ECF No. 289.

The following day, March 6, 2025, the court issued a Final Order of Forfeiture and an Amended Order of Restitution. ECF No. 290. The amended order confirmed the forfeiture, and restitution amounts for the above stated petitioners but added that the court considered the factors set forth in 18 U.S.C. § 3664(f)(2) in making its determination that Defendant could pay the restitution. *Id.* The court issued its Amended Judgment with the final restitution amounts on March 6, 2025.[11] ECF No. 291.

## II.    PETITIONER CANOVAS' MOTION FOR AWARD OF ATTORNEYS' FEES

On March 26, 2025, Petitioner Canovas filed a Motion for Award of Attorneys' Fees and a Memorandum in Support. ECF No. 295.  He argued that he was entitled to attorneys' fees on four grounds: (1) the substantial benefit doctrine, (2) the Eleventh Amendment of the Constitution, (3) the private attorney general doctrine, and (4) the Equal Access to Justice Act. *See id.* Mr. Berman filed a declaration to establish the amount of money he was owed for his legal services based on his rate and the number of hours he worked on the matter. *See* ECF No. 296. Mr. Berman also filed a declaration from Mr. Braddock Huesman, a practicing attorney on island, confirming that Mr. Berman's $275.00 rate was "common[]" based on his experience and on the legal market for litigation in Guam. *See* ECF No. 297. Petitioner Manalo and his attorney, Mr. Peter Perez, joined the motion. ECF No. 298.

---

[11] On May 8, 2025, the court issued a Second Amended Judgment to correct clerical errors, including correcting item "c" to be 214,528.52307727 VET. ECF Nos. 306, 309, 310.

## III.     PETITIONER MANALO'S MOTION FOR AWARD OF ATTORNEYS' FEES

On April 4, 2025, Petitioner Manalo filed his Motion for Award of Attorney's Fees in which he incorporated the arguments from Petitioner Canovas' motion. ECF No. 301, at 1. He highlighted counsels' legal work: "(a) opposing the Dismissal Motion while other claimants withdrew or did not prosecute their petitions; (b) preparing for and appearing at motion and evidentiary hearings; (c) demanding discovery and materials from the Government; (d) reviewing discovery and materials obtained from the Government; (e) inspecting property seized by the Government; (f) meeting and conferring with the Government and law enforcement agents; (g) assembling, preparing, and filing exhibit lists, witness lists, and other filings required by the Court; (h) appearing and arguing at the motion and evidentiary hearings; (i) uncovering records, testimony, and evidence that had not been previously obtained." *Id.* at 3-4. This legal work led to significant benefits for other claimants: (a) "facilitation of the resolution of the forfeiture and restitution issues [in] this case"; (b) Petitioner Sunil "Uttamchandani sought and was permitted leave to withdraw his stipulation to withdraw his forfeiture petition as a result of new evidence and testimony on February 24, 2025"; (c) Petitioner "Hipolito sought and was permitted leave to withdraw his stipulation to withdraw his forfeiture petition as a result of new evidence and testimony on February 24, 2025"; (d) Petitioner Sunil "Uttamchandani was granted 5.09 Bitcoin"; (e) Petitioner "Hipolito was granted 5 Bitcoin"; and (f) Petitioner "Sulla was granted additional restitution in an additional amount exceeding $100,000.00." *Id.* at 4. Counsels Mr. Han and Mr. Berman joined Petitioner Manalo's motion. *See* ECF Nos. 302, 303. On April 11, 2025, the Government filed an Opposition to Petitioner Manalo's motion incorporating its Opposition to Petitioner Canovas' motion.[12] *See* ECF No. 305.

---

[12] Petitioners Hipolito and Sunil Uttamchandani filed a joinder to the Government's opposition. ECF No. 308.

## IV.    GOVERNMENT'S OPPOSITIONS AND PETITIONER CANOVAS' REPLY

On April 2 and April 11, 2025, the Government filed its Oppositions to Petitioner Canovas and Petitioner Manalo's respective motions. ECF Nos. 300, 305. The Government argued that the petitioners are not entitled to attorneys' fees under any of the four bases that they proposed. *See* ECF No. 300. As such, the Government contended that Petitioners Canovas and Manalo's motions must be denied because they are not eligible for an award of attorneys' fees. *Id.* On April 16, 2025, Petitioner Canovas filed his reply to the Government's Opposition.[13] ECF No. 307.

## V.    LEGAL ANALYSIS REGARDING ATTORNEYS' FEES

The "general American rule is that attorneys' fees are not ordinarily recoverable as costs," but "both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such recovery." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970); *see also Reiser v. Del Monte Props. Co.*, 605 F.2d 1135, 1137 (9th Cir. 1979). Here, the central question is whether Petitioners Canovas and Manalo's attorneys are entitled to attorneys' fees under one of the exceptions to the general rule. They argued two such exceptions, and those two exceptions are the common fund and substantial benefit doctrine and the Equal Access to Justice Act. Petitioners also argue two additional bases they contend entitle them to attorneys' fees: the Eleventh Amendment and the private attorney general doctrine.

### A.  GROUNDS FOR ATTORNEYS' FEES

#### 1.  Common Fund and Substantial Benefit Doctrines (Court Exception)

Both Petitioner Canovas and Petitioner Manalo contend that they are entitled to

---

[13] Petitioner Manalo did not file a reply to the Government's Opposition and he did not join Petitioner Canovas' reply.

attorneys' fees "based on the application of the Substantial Benefit Doctrine" as their attorneys conveyed a "concrete and significant benefit" on "an ascertainable class." ECF No. 295, at 6; ECF No. 307, at 5-6.

The common fund and the common benefit doctrines require that "successful litigation must either impart a substantial nonmonetary benefit or create or preserve a common fund for an identifiable class of beneficiaries." *Se. Legal Def. Grp. v. Adams*, 657 F.2d 1118, 1122 (9th Cir. 1981) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)); *see also Southerland v. Int'l Longshoremen's and Warehouse's Union, Local 8*, 845 F.2d 796, 798 (9th Cir. 1987) ("The 'substantial benefit' principle is based on the premise that a successful plaintiff should be able to spread the costs of his litigation among those who benefitted from the successful outcome."). The substantial benefit doctrine has expanded the common fund doctrine to instances when a substantial benefit "has been conferred upon the members of an ascertainable class, despite the fact the benefit is not monetary." *Loring v. City of Scottsdale, Ariz.*, 721 F.2d 274 (9th Cir. 1983). A party seeking attorneys' fees under the common fund or the substantial benefit doctrine must show (1) that the benefitted parties "were small in number and easily identifiable;" (2) "[t]he benefits could be traced with some accuracy;" and (3) the costs could be attributed "with some exactitude" to those who benefitted from the litigation" *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 264 n. 39 (1975)); *see also Southerland*, 845 F.2d at 798.

The Supreme Court has based the equitable nature of this remedy on a theory of unjust enrichment. *See Hall v. Cole*, 412 U.S. 1, 6 (1973) (citing *Mills*, 396 U.S. at 392). Specifically, the Supreme Court has explained that the purpose of awarding attorneys' fees under these doctrines is to share the costs of litigation on the parties who have "benefitted from" the litigation and "would have had to pay" litigation expenses had they brought the action

themselves. *See Mills*, 396 U.S. at 396-97.

Here, Petitioners ask for an equitable setoff under the substantial benefit doctrine because the "substantial benefit" conveyed by their "legal expenditure was not imparted to all Guam or U.S. taxpayers," but instead to a "sufficiently small in number and identifiable group of victim investors." ECF No. 307, at 6-7. The Government counters it has not waived sovereign immunity, and the substantial benefit doctrine is not applicable where there is a statute that allows recovery of attorneys' fees in the context of ancillary proceedings for criminal forfeiture. ECF No. 300, at 6. Furthermore, the Government asserts that the Petitioners have "not provided any authority [under the substantial benefit doctrine] that such a claim is cognizable in the ancillary proceedings/criminal forfeiture context or that this is the proper forum for such a claim."[14] *Id.*

This court finds that based on the two leading Supreme Court cases, *Mills v. Electric Auto-Lite Company* and *Hall v. Cole*, the Supreme Court only intended for these doctrines to apply when the litigating party was (1) successful, and (2) secured a common or shared benefit for the litigating parties and the benefiting parties.

In *Mills v. Electric Auto-Lite Company*, a shareholder successfully litigated a securities fraud claim to set aside a merger involving his corporation. *Mills*, 396 U.S. at 389. The Supreme Court found that this not only benefitted the litigating plaintiff, but also his corporation and all of his fellow shareholders. *Id.* at 392. So, even though the suit had not yet produced a monetary award, the Court acknowledged that it had "conferred a substantial benefit on the members of an ascertainable class." *Id.* at 393-94. Thus, the Court extended the "primary judge-created exception ... to award expenses where a plaintiff has *successfully* maintained a suit, usually on

---

[14] "[T]he common fund doctrine gives rise to two kinds of claims: claims by plaintiffs to have their legal costs shared and claims by attorneys for an award other than that paid or owed by the client." Alan Hirsch & Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* 67 (Fed. Judiciary Ctr. 3d ed. 2015) (citing *Skelton v. GM Corp.*, 860 F.2d 250, 253 (7th Cir. 1988)).

behalf of a class, that benefits a group of others *in the same manner as himself.*" *Id.* at 392 (emphasis added). The Court continued its explanation, stating that "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.* at 392. Accordingly, in that case, the Court emphasized that plaintiff was successful in his claim and that the claim mutually benefitted an ascertainable class.

In *Hall v. Cole*, a union member successfully litigated a case under the Labor-Management Reporting and Disclosure Act after he was expelled from the union for raising concerns at one of its meetings about "undemocratic actions and shortsighted policies on the part of union officers." *Hall*, 412 U.S. at 2-3. The plaintiff sued and "vindicate[ed] his own right of free speech guaranteed" by the Labor-Management Reporting and Disclosure Act. *Id.* at 8. The Supreme Court found this litigation benefitted the union member and the union as a whole because it supported "the preservation of union democracy." *Id.* at 8. The Court held that "an award of counsel fee[s] to a successful plaintiff" was justified under the "traditional equitable power of federal courts." *Id.* at 9. Similar to *Mills*, the Court held that attorneys' fees were justified when the plaintiff was successful and when his claim mutually benefitted himself and an ascertainable class, his union.

After considering these two Supreme Court cases, the court finds Petitioners Canovas and Manalo face two problems. First, they were not successful parties, and second, their petitions could not have benefitted the third-party claimants in the same manner as they would have benefitted themselves. *See Mills*, 396 U.S. at 392-94; *Hall*, 412 U.S. at 8-9. The Petitioners do not contest that they "lost" the forfeiture proceedings.[15] *See* ECF No. 295, at 3; ECF No. 301, at

---

[15] While Petitioner Canovas points out that he received restitution as a result of the criminal case, he was unsuccessful on his forfeiture petition. To be clear, the Government did not dispute Petitioner Canovas' claim to restitution and no third-parties benefitted from Petitioner Canovas' restitution claim. *See* ECF No. 300, at 4.

4. Neither Petitioner Canovas nor Petitioner Manalo were awarded any of the forfeited Bitcoin that they claimed an interest in. Additionally, the Petitioners were claiming an interest in Bitcoin from the same list of property subject to forfeiture as the other third-party claimants. There was 94.851329 Bitcoin available for the petitioners' claims after the court granted the Government's Motion for Partial Order of Forfeiture, and the parties were all claiming separate, distinct interests in Bitcoin. *See* ECF No. 263, at 4. As the remaining pool of Bitcoin was finite, their claims necessarily conflicted with one another. *See id.* Accordingly, the court declines to extend the common fund doctrine or the substantial benefit doctrine to situations, as in this case, where the litigating parties were unsuccessful in litigating their own claims, and the only benefits went incidentally to third-party claimants with separate and potentially conflicting claims to the forfeited property.

### 2. Equal Access to Justice Act (Congressional Exception)

Petitioners Canovas and Manalo alternatively request attorneys' fees under the Equal Access to Justice Act. ECF No. 295, at 14. They argue that they were a prevailing party under the Equal Access to Justice Act because Petitioners Sunil Uttamchandani, Edgardo Hipolito, and Cecil Sulla prevailed in the underlying forfeiture proceedings. *Id.*; *see also* ECF No. 301, at 4. And they argue that the United States' positions regarding its motion to dismiss the other petitioners cannot be "substantially justified" because the court ultimately awarded 5.09 Bitcoin and 5 Bitcoin to Petitioners Sunil Uttamchandani and Edgardo Hipolito as a part of the forfeiture proceedings and Petitioner Sulla "was granted additional restitution." *Id.* Furthermore, they argue that they are prevailing parties because Petitioner Canovas showed at the hearings that he was entitled to restitution. *Id.* Petitioners emphasize that they "need not prevail on all issues" and that they have prevailed here because they secured "all relevant discovery" for Petitioners Sunil "Uttamchandani and Hipolito." ECF No. 307, at 3.

The Government counters that Petitioners Canovas and Manalo failed to satisfy the elements of a claim under the Equal Access to Justice Act. *See* ECF No. 300, at 2-3. For these proceedings, the Government argues that neither Petitioner Canovas nor Petitioner Manalo were prevailing parties. *Id.* at 4. As noted above, Petitioner Canovas' "petition was denied because the court found that he did not satisfy the criteria of 21 U.S.C. § 853(n)(6)" and Petitioner Manalo's petition was dismissed. *See* ECF Nos. 288; 289, at 5-6; 300, at 4. Furthermore, Petitioner Canovas' restitution amount was not disputed by the Government and took place in the separate restitution context, not the forfeiture context. *See* ECF No. 300, at 4. "While ancillary proceedings in the criminal forfeiture context are 'civil' within the meaning of the [Equal Access to Justice Act], restitution is wholly part of the criminal sentencing process and thus outside the purview of the [Equal Access to Justice Act]." *Id.* (internal citations omitted). Moreover, the Government argues that "[t]here is no support in the [Equal Access to Justice Act] for the idea that a petitioner whose claim was denied in its entirety may nevertheless recover attorneys' fees because separate petitioners with entirely different claims and separate legal representation obtained the relief they sought." *Id.*

The Government also asserts that their position was substantially justified for the proceedings. *See id.* at 5. The Government filed a motion for a preliminary order of forfeiture, and once the court granted it, the Government published notice of the forfeiture. *Id.* The Government reviewed the petitions from the third-party claimants and determined that they were "plainly deficient in that [they] failed to establish any ability to trace an interest in [the Petitioners'] lost property to the property subject to forfeiture." *Id.* The court then granted the Government's motion to dismiss Petitioner Manalo's petition and denied Petitioner Canovas' petition after an evidentiary hearing, thus demonstrating that the Government's position was substantially justified. *Id.*; *see also* ECF Nos. 288; 289, at 5-6.

The Equal Access to Justice Act allows a prevailing party "in certain adversary administrative proceedings" to recover attorneys' fees from the Government. *Ardestani v. I.N.S.*, 502 U.S. 129, 132 (1991). Section 504(a)(1) of the Equal Access to Justice Act states that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." The Equal Access to Justice Act applies to ancillary proceedings regarding criminal forfeitures. *See, e.g., U.S. v. Douglas*, 55 F.3d 584, 588 (11th Cir. 1995) ("[W]e hold that litigation between an innocent third-party claimant and the Government, ancillary to a criminal forfeiture proceeding, is a civil action within the purview of the [Equal Access to Justice Act]."); *see also U.S. v. Alcaraz-Garcia*, 79 F.3d 769, 772 n.4 (9th Cir. 1996).

Plaintiffs must set forth certain requirements to be entitled to attorneys' fees under the Equal Access to Justice Act: "(1) a showing that they are the prevailing party; (2) a showing that they are eligible to receive an award; (3) a statement of the amount sought together with an itemized account of time expended and rates charged; *and* (4) an allegation that the position of the United States was not substantially justified." *Mohamed v. Barr*, 562 F.Supp.3d 1128, 1132 (E.D. Cal. 2022) (citing 28 U.S.C. § 2412(d)(1)(B) (emphasis added); *Scarborough v. Principi*, 541 U.S. 401, 408 (2004)). A "prevailing party" under the Equal Access to Justice Act is "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1030 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Citizens for Better Forestry v. U.S. Forest Serv.*, 567 F.3d 1128, 1131 (9th Cir.2009)). *But see City of Carmel-By-The-Sea v. U.S. Dept. of Transp.*, 123 F.3d 1142, 1167 (9th Cir. 1997) ("To be a prevailing party under the Equal Access to Justice

Act, a party need not prevail on all issues.").

The first element is not met here because Petitioners Canovas and Manalo did not prevail on their petitions, and therefore, the court need not analyze the rest of the elements. Petitioner Canovas claimed an interest in 4.04 Bitcoin and Petitioner Manalo claimed an interest in 6.15 Bitcoin. *See* ECF Nos. 87, 93. The court denied Petitioner Canovas' petition and dismissed Petitioner Manalo's petition. ECF No. 289, at 5-6. Neither party received any of their claimed interest in the forfeited property. As such, they did not prevail on their petitions.

Petitioners argue that other third-party claimants prevailed based on the work provided by Petitioner Canovas' and Petitioner Manalo's attorneys. This argument fails for several reasons. First, there is no caselaw or support in the statute for the award of attorneys' fees to a party that did not win on any of their own claims. Second, Petitioners Sunil Uttamchandani, Hipolito, and Sulla had distinct petitions where they alleged their own claims in their own Bitcoin. These claims were distinct from the claims of Petitioner Canovas and Petitioner Manalo. Third, these other petitioners were all represented by their own attorneys who may have incidentally benefitted from the work of Petitioner Canovas' and Petitioner Manalo's counsels, but who still represented their clients throughout the proceedings. *See* ECF Nos. 288, 289.

Petitioners also cannot claim that they prevailed because Petitioner Canovas was awarded $16,950.00 in restitution. Restitution is separate and apart from criminal forfeiture. There is no legal authority that allows for attorney fees under Equal Access to Justice Act for restitution proceedings. Additionally, the Government did not dispute Petitioner Canovas' restitution claim at the proceedings.[16]

### 3. Eleventh Amendment of the Constitution

Petitioners contend that the court may award attorneys' fees when a state agency acts in

---

[16] Petitioner Manalo did not receive restitution. *See* ECF Nos. 288, 289.

bad faith under the Supreme Court's Eleventh Amendment jurisprudence. ECF No. 295, at 12. They allege that the Government acted in bad faith as evidenced by the orders compelling discovery and to show cause. *Id.* The Government challenges the Petitioners' interpretation of the Eleventh Amendment. ECF No. 300, at 6-7. The Government argues the case cited by the Petitioners, *Hutto v. Finney*, 437 U.S. 678 (1978), and the Eleventh Amendment to the Constitution "simply have no bearing on [the Petitioners'] claim for attorneys' fees against the United States in these ancillary proceedings." *Id.* at 7. This court agrees.

The Eleventh Amendment of the United States Constitution states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This amendment stands for the proposition "that each State is a sovereign entity in our federal system" and that "'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisianna*, 134 U.S. 1, 13 (1890)); *see also Guam Soc. of Obstetricians and Gynecologists v. Ada*, 776 F.Supp. 1422, 1420 (D. Guam 1990) (discussing sovereign immunity under the Eleventh Amendment in the context of Guam).

The case cited by the Petitioners, *Hutto v. Finney*, does not support their speculation that the "Eleventh Amendment jurisprudence may support the award of attorneys' fees." ECF No. 295, at 7. That case, as the Government pointed out, involved claims against the state of Florida, and not the United States. *See Hutto v. Finney*, 437 U.S. 678, 689-93 (1978). As the Eleventh Amendment and its jurisprudence relate to state sovereign immunity and not the award of attorneys' fees in suits against the United States, the Petitioners do not have a claim on this basis.

### 4. Private Attorney General Doctrine

Petitioners' last argument entitling them to attorneys' fees is derived from the private attorney general doctrine. They contend their actions "served as the catalyst" for the award of Bitcoin to Petitioners Sunil Uttamchandani, Hipolito, and Sulla, and that they are entitled to attorneys' fees under the private attorney general doctrine. ECF No. 295, at 13. The Government argues that the doctrine "is largely a function of state statutes and common law." ECF No. 300, at 7. Furthermore, the Government asserts that "the U.S. Supreme Court repudiated the Private Attorney General doctrine because the authority of federal courts to award attorneys' fees is limited to those situations authorized by Congress." *Id.*

The Supreme Court has rejected the private attorney general doctrine for the awarding of attorneys' fees. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 264 n. 39 (1975); *see also U.S. v. Imperial Irr. Dist.*, 595 F.2d 525, 529 (9th Cir. 1979) ("The 'substantial benefits' exception to the traditional rule disfavoring awards shifting legal fees is well recognized, and survives the [Supreme Court's] rejection … of the more sweeping 'private attorney general' theory of counsel fee recovery.") (internal citations omitted). As the Supreme Court has rejected the private attorney general doctrine, so must this court.

In summary, as seen above, the four bases that Petitioner Canovas and Manolo's assert for attorneys' fees are meritless.

### B. ORDER TO SHOW CAUSE

In Petitioner Canovas' reply, he requested an order to show cause for the Government to "complete [its] reporting, appoint an independent receiver of special master, fund the special master with proceeds from Bitcoin to retain private – neutral and detached legal counsel in order to conduct depositions, produce all email correspondence from [United States Secret Service Special Agent] James Ingram to Ichioka (at the minimum), obtain the Ichioka Coinbase trading

records, issue a subpoena to Coinbase and perform the tracing work, all in order to satisfy the USA duty they created when they filed a Motion to Dismiss that succeeded as to 95% of all claims, but failed spectacularly at the last minute as to two claims for 10.06 Bitcoin." ECF No. 307, at 9. He requests such an order because there is an alleged discrepancy in the "reported, claimed and returned Bitcoin" and "the opposition does nothing to rebut or defense [sic] these specific allegations." *Id.* at 8. Moreover, Petitioner Canovas claims that "the government has done nothing for a tracing report" which would have assisted with his claim. *Id.*

The court does not find good cause to issue an order to show cause. The discrepancy that Petitioner Canovas notes, the differing amounts of Bitcoin in the Plea Agreement, the Amended Presentence Investigation, and the Ingram Report from September 23, 2021, were all available for the court to analyze at the February 24 and 25 hearings. *See* ECF Nos. 7, 56, 286-1. The court issued its Order dated April 11, 2025, (ECF No. 304), fully aware of this information. Furthermore, the Government was under no duty to oppose this discrepancy in its opposition because the court had already decided the final figures for restitution and forfeiture. *See* ECF No. 310. Lastly, the Government already detailed the investigative steps they took to effectuate discovery for these proceedings, and the court accepted the Government's explanation when it issued its order finding no bad faith. *See* ECF No. 304.

Moreover, the Government outlined in its Response to Order to Show Cause its efforts to trace the cryptocurrency from the Coinbase records following the court's order dated February 21, 2025. ECF No. 280, at 5. The Government contacted agents with the United States Secret Service based in Guam and the agents "confirmed that they had no Coinbase records in evidence." *Id.* The Government then met with Defendant Weymouth to ask for his assistance and Defendant Weymouth was able to re-constitute the crypto wallet. *Id.* at 7. Thereafter, the Government informed the parties of the newly discovered evidence in the case. *Id.* at 9. In its

Response to the Order to Show Cause, the Government confirmed that the United States Secret Service made attempts to trace the seized property to any of the identified victims but ultimately was unsuccessful. *Id.* at 4, 10.

The court ruled on the matter and ultimately found that counsel for the Government "did not act in bad faith." ECF No. 304, at 2. Explaining again what it discussed at the February 24 and 25 hearings, the court stated that the Government could have been more diligent. *Id.* The court, however, evaluated the Government's investigation and decided not to sanction the Government. *Id.* at 2, 4.

Accordingly, the court will not revisit issues already addressed. Petitioner Canovas' request for an order to show cause is denied.

## VI. CONCLUSION

Based on the foregoing, Petitioners Canovas and Manalo's Motions for Attorneys' Fees are hereby **DENIED**. Petitioner Canovas' request for an order to show cause is also **DENIED**.

**SO ORDERED** on this 13th of July, 2026.

Frances M. Tydingco-Gatewood
Chief Judge, District Court of Guam